NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| In the Matter of | : | Case No. 08-10035/JHW |
| H. Donald Stewart Jr. | : | Adver. No. 08-1281 |
| Debtor | : | |

_____

| | | |
|---|---|---|
| Daniel Grumbine and Graham P. Bottrel, Jr. | : | **OPINION ON MOTION TO REOPEN** |
| | : | |
| Plaintiffs | | |
| v. | : | |
| H. Donald Stewart, Jr. | : | |
| Defendant | : | |

_____

```
                    FILED
            JAMES J. WALDRON, CLERK

                 June 11, 2013

            U.S. BANKRUPTCY COURT
                 CAMDEN, NJ
        BY:  s/ Theresa O'Brien, Judicial
             Assistant to Judge Wizmur
```

APPEARANCES:   Thomas M. North, Esq.
               Law Office of Thomas M. North
               53 Newton Avenue
               Woodbury, New Jersey  08096
               Counsel for the Plaintiffs

               Nicholas Herron, Esq.
               205 Landis Avenue
               Vineland, New Jersey  08360
               Counsel for the Debtor

The debtor/defendant in this adversary proceeding, H. Donald Stewart, Jr., moves to reopen his Chapter 7 bankruptcy case and to vacate the order granting summary judgment to the plaintiffs, Daniel Grumbine and Graham P. Bottrel, Jr.  The order, entered by this court on October 10, 2008, declared that the debt due to the plaintiffs from the defendant in the amount of $814,136.29 was nondischargeable under 11 U.S.C. § 523(a)(2)(A).  This court based its

ruling on the ground that the judgment entered in the New Jersey Superior

Court, Law Division, Gloucester County, in favor of the plaintiffs and against

the defendant on October 9, 2007, collaterally estopped the defendant from

relitigating the issues resolved by that judgment in this court.  Because this

motion is untimely, and because extraordinary circumstances have not been

shown to warrant the relief sought, the motion is denied.


## FACTS


To understand the issues raised, it is necessary to review the factual

background of the claims of the plaintiffs against both the debtor/defendant,

H. Donald Stewart, Jr., and Nicholas L. Azeglio, Jr., an associate of Mr.

Stewart.  As well, I will review the procedural history of the two adversary

proceedings filed by the plaintiffs against H. Donald Stewart and Nicholas

Azeglio, respectively, and will then turn to this motion.


1.    Factual Background of the Plaintiffs' Claims.


The plaintiffs purchased a home within a subdivision commonly known

as the Beckett Development, located at 26 Birchwood Place, Swedesboro,

Gloucester County, New Jersey, from Richard and Linda Dunn (the "Sellers").

Settlement on the property occurred on August 27, 2004.  Prior to the closing,

the Sellers retained realtor Nicholas Azeglio, Jr., a licensed real estate agent

from the Century 21 Stewart Agency, Stewart's real estate agency, to list their property for sale on their behalf.  Azeglio assisted the Sellers in completing a Disclosure Statement, in which the Sellers were required to disclose their awareness of any underground fuel tanks or toxic substances on the property, but failed to do so.  In the Agreement of Sale entered into between the plaintiffs and the Sellers on July 11, 2004, apparently prepared by Azeglio or his office, the Sellers indicated that they did not know about underground fuel tanks on the property.

Before the Agreement of Sale was signed, the plaintiffs contend that a letter was forwarded to Stewart from "Concerned Homeowners of Beckett" expressing concern about the real estate agency's apparent failure to disclose to the prospective purchasers of the property that there was "an abandoned non-operative underground oil storage tank on the property."[1]  No disclosures regarding the existence of such tanks were made by either Azeglio or Stewart.

Following the signing of the Agreement of Sale, the regulatory process for obtaining a Certificate of Occupancy from the municipality was initiated.  An environmental consultant was retained by the real estate agency to conduct a

---

[1]     The potential admissibility at a trial in this adversary proceeding against Stewart of the letter from "Concerned Homeowners", which was appended to various submissions made by the plaintiffs throughout these proceedings, including their original motion for Summary Judgment, Dckt. #6, is not resolved here.  The document was not admitted into evidence in the trial held in the Azeglio case.

visual inspection of the property to determine whether there were any

indications of an underground fuel tank on the property.  A more robust

inspection using a metal locator was not conducted.  The report issued

indicated that although there were indications that an underground tank had

either been or was still on the property, no such tank was visually located.  The

report was accepted by the official of the municipality to whom it was

submitted, and a Certificate of Occupancy was issued.

Closing on the property took place in August 2004.  Immediately after

the settlement, the plaintiffs were informed by a neighbor of the existence of an

underground oil tank on the property, which fact the plaintiffs later confirmed

with experts.  The oil tank was determined to have been leaking, requiring

significant costs to remediate.

On July 18, 2005, the plaintiffs filed a complaint in the New Jersey

Superior Court, Law Division, Gloucester County, Dkt. No. GLO-L-1212-05,

against Stewart, Azeglio and others, alleging, among other things, violations of

the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 et seq.  Both Stewart and

Azeglio were represented at the outset by separate counsel, and each defendant

filed an answer, defenses, a cross-claim, a third party complaint, and

opposition to a motion for summary judgment.  Each defendant or his counsel

also attended at least four depositions in the state court matter, and was

himself deposed.  Ultimately, both the attorneys for Stewart and Azeglio

withdrew from the case before trial.  As to Stewart, his attorney, Michael J.

Lario, moved to withdraw from the case on July 17, 2007.  In his certification,

on page five of a six-page submission, Mr. Lario mentioned that the trial was

scheduled for September 26, 2007.  The motion was granted.  The only other

notice Stewart received of the scheduled trial date was a letter from plaintiffs'

counsel dated September 20, 2007, and received on September 24, 2007 at

11:35 a.m.  According to Stewart, he called the law firm on September 24 and

received a message back on the same day that he did not have to appear and

would receive further information about the scheduling of the trial.  He heard

nothing further about scheduling, and did not appear at the trial.


As to Azeglio, his attorney also withdrew from the case before the trial, he

had no notice of the trial date, did not know about the trial date, and did not

appear.


The trial proceeded on September 26 without the appearance of either

Stewart or Azeglio.  The state court concluded that both defendants had

violated the New Jersey Consumer Fraud Act, trebled the plaintiffs' damages,

and entered judgment on October 7, 2007, against Stewart and Azeglio, jointly

and severally, in the amount of $814,136.29.


2.    <u>Grumbine and Bottrel v. Stewart, Adver. No. 08-1281</u>.

Stewart filed a Chapter 7 bankruptcy case on January 1, 2008. On March 27, 2008, the plaintiffs filed an adversary proceeding seeking a declaration of nondischargeability of their claim against Stewart, citing to 11 U.S.C. § 523(a)(2)(A), (a)(4) and (a)(6). Following the filing of an answer by the defendant, the plaintiffs filed a motion for summary judgment on August 12, 2008. The summary judgment motion was premised on the argument that the principle of collateral estoppel precluded the relitigation of the issues resolved by the state court judgment against Stewart, and that this court was required to honor the state court judgment against the debtor.

In opposition to the plaintiffs' motion for summary judgment on the nondischargeability complaint against him, Stewart argued that the elements of 11 U.S.C. § 523(a)(2)(A) were not established by the entry of the state court judgment against him. To be nondischargeable under § 523(a)(2)(A), a debt must be shown to have been incurred by "false pretenses, a false representation, or actual fraud." The requisite elements to establish nondischargeability under § 523(a)(2)(A) include that:

(1) the debtor made the misrepresentations;

(2) that at the time he knew they were false;

(3) that he made them with the intention and purpose of deceiving the creditor;

(4) that the creditor relied on such representations;

(5) that the creditor sustained the alleged loss and damage as the
proximate result of the representations having been made.

In re Hashemi, 104 F.3d 1122 (9th Cir.), cert. denied, 520 U.S. 1230, 117 S. Ct.

1824, 137 L. Ed.2d 1031 (1997).  See also In re Reynolds, 193 B.R. 195, 200

(D.N.J. 1996); In re Cohen, 191 B.R. 599, 604 (D.N.J. 1996), aff'd, 106 F.3d 52

(3d Cir. 1997), aff'd, Cohen v. de la Cruz, 523 U.S. 213, 118 S. Ct. 1212, 140

L.Ed.2d 341 (1998).  In his response to the plaintiffs' summary judgment

motion, Stewart emphatically denied making any false representations to the

plaintiffs or having any intent to deceive the plaintiffs in any way.

       The plaintiffs responded to Stewart's denials by citing the factual findings

of the state court and contending that each of the requisite § 523(a)(2)(A)

elements were met.  Particular portions of the transcript of the proof hearing

against Stewart and Azeglio before the state court on September 26, 2007

included the following excerpts:[2]

### Court Findings: Debtor's Knowledge of Tank, and Debtor's Knowledge of Sellers' Misrepresentation to Plaintiffs

       i.   That the neighbors, Mr. and Mrs. Carrozza, sent a
letter dated July 8 of 2004, to 23 Century 21 Stewart Agency
at 14 Village Center Drive in 24 Swedesboro, to the attention
of the Debtor [Stewart] stating that: "Rumors are spreading

---

[2]   References to the "Transcript" refer to the transcript of proceedings of the
Superior Court on September 26, 2007, which is appended as Exhibit A to the
plaintiff's motion for summary judgment.  Docket #6, Memorandum of Law,
p.7.

in the neighborhood that your agency, which has the listing for 26 Birchwood Place has full knowledge that there's an abandoned, non-operative underground oil storage tank on the property and that this fact is not being disclosed."
(See Transcript Page 4, Lines 17-26, and Page 5, Lines 1-6).

j.    The Court found that "... I am satisfied from the information that was available to Mr. Azeglio and to Mr. Stewart, who I take it is a principal of Don Stewart -- or Century 21 Stewart Agency. That both Azeglio and Stewart knew or should have known of the duty to disclose the potential for existence of an underground storage tank at this property." (Transcript Page 7, Lines 3-10).

k.    The Court further found, regarding the Debtor, "... And that Mr. Stewart, likewise having been sent the letter, *knew of the misrepresentation that there was no underground storage tank on the property.* (See Transcript, page 8, lines 14-16). [emphasis added].

### Court Finding as to Consumer Fraud

l.    The Court further found: "So that I would find both the agency and Mr. Stewart and Mr. Azeglio have violated the Consumer Fraud Act, by the activity in connection with the failure to disclose and the - the failure to disclose the potential and probable existence of the underground storage tank the failure to get a proper metal detector." (See Transcript, page 8, lines 17-23.)

At the hearing on the plaintiffs' summary judgment motion, I recognized that collateral estoppel principles apply in bankruptcy proceedings, Grogan v. Garner, 498 U.S. 279, 285 n.11, 111 S. Ct. 654, 658 n.11, 112 L.Ed.2d 755 (1991), and that when considering a judgment rendered by a state court, state laws of preclusion apply.  Suarez v. Camden County Bd. of Chosen Freeholders, 972 F. Supp. 269, 273 (D.N.J. 1997).  The New Jersey law

governing principles of collateral estoppel precludes the relitigation of an issue

when:

> (1) the issue to be precluded is identical to the issue decided in the prior proceeding;
>
> (2) the issue was actually litigated in the prior proceeding;
>
> (3) the court in the prior proceeding issued a final judgment on the merits;
>
> (4) the determination of the issue was essential to the prior judgment; and
>
> (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.

Podias v. Mairs, 2008 WL 4763275, *4 (N.J. App. Div. Nov. 3, 2008) (citing to In

re Estate of Dawson, 136 N.J. 1, 20-21, 641 A.2d 1026 (1994)).  See also

Gannon v. American Home Products, Inc., 414 N.J. Super. 507, 521, 999 A.2d

522, 529-30 (App. Div. 2010); Division of Youth and Family Services v. R.D.,

412 N.J. Super. 389, 400, 991 A.2d 233, 239 (App. Div. 2010).


The focus of the discussion regarding the application of collateral

estoppel to preclude the trial of the nondischargeability complaint was whether

the issue to be precluded in the nondischargeability action, i.e., whether

Stewart committed a fraud against the plaintiffs, was identical to the issue

decided in the prior case, i.e., that Stewart violated the New Jersey Consumer

Fraud Act, and whether the determination in the prior case was essential to the

prior judgment.  In particular, we discussed the extent to which the conclusion

by the state court that Stewart violated the New Jersey Consumer Fraud Act,

N.J.S.A. 56:8-1 et seq. established for § 523(a)(2)(A) purposes that Stewart

intended to deceive the plaintiffs by his failure to inform them of the existence

of the underground oil tank on the property to be purchased by the plaintiffs.

Under the Consumer Fraud Act, while a violation of the Act may be found

where the defendant has committed an affirmative act that constitutes an

unlawful practice even without knowledge of the falsity of a misrepresentation

or proof of an intent to commit an unlawful act, Cox v. Sears Roebuck & Co.,

138 N.J. 2, 17-18, 647 A.2d 454, 462 (1994), where an omission or failure to

disclose has occurred, the plaintiff must show that the defendant acted with

knowledge.  Gennari v. Weichert Co. Realtors, 148 N.J. 582, 605, 691 A.2d

350, 365 (1997).  In this case, the debtor was charged in the state court

litigation with an omission.  In particular, he was charged with failing to inform

the plaintiffs about the existence of underground oil tanks on the property to

be purchased, when he knew or should have known about the existence of the

tanks.  I opined that because the debtor was found to have violated the

Consumer Fraud Act by his silence, the decision of the state court must have

incorporated the conclusion drawn from the facts found by the court that he

knowingly committed a fraud on the plaintiffs.  I concluded that the other

elements of collateral estoppel were met[3] and granted summary judgment in

favor of the plaintiffs.  An order was entered on October 10, 2008.

---

[3]     The element of collateral estoppel regarding whether the issues sought to
be precluded were "actually litigated" before the entry of the 2007 judgment
against Stewart was entered was not raised at oral argument on the plaintiffs'

3.    <u>Grumbine and Bottrel v. Azeglio, Adver. No. 09-1914</u>.


Nicholas Azeglio filed a Chapter 7 bankruptcy case on March 17, 2009.

The plaintiffs filed an adversary proceeding against him on June 17, 2009,

seeking a declaration of nondischargeability on their claim against him on the

ground of 11 U.S.C. § 523(a)(2)(A), (a)(4) and (a)(6).  As in the adversary

proceeding filed against Stewart, the plaintiffs filed a motion for summary

judgment on August 24, 2009, asserting that the principles of collateral

estoppel precluded the relitigation of the nondischargeability issues raised

under § 523(a)(2)(A).


In a written opinion issued on January 27, 2010, <u>see</u> <u>In re Azeglio</u>, 422

B.R. 490 (Bankr. D.N.J. 2010), I determined to deny the motion for summary

judgment, determining that the requisite element of collateral estoppel, i.e.,

that the initial action was "actually litigated" by Azeglio, was missing.  The

record reflected that although Azeglio had been represented by an attorney

throughout the early stages of the case, and that he attended several

depositions of witnesses, including his own deposition, his attorney withdrew

from the case about six (6) weeks before the trial date, and did not inform the

---

summary judgment motion, although Stewart's counsel did argue in his
memorandum in opposition to the motion that the issues "were never litigated"
in state court, and that Stewart "had no knowledge of the hearing and did not
participate in the hearing."  Memorandum of Law in Opposition to Motion for
Summary Judgment, Docket #8, at p.2.

debtor about the scheduled date.  It is undisputed that Mr. Azeglio had no

knowledge of the trial date.

The trial of the nondischargeability complaint against Azeglio was

conducted on November 16, 2010.  By written decision dated November 23,

2010, I rejected the quest by the plaintiffs to determine that the claim against

Azeglio should not be discharged.  I determined that several elements of §

523(a)(2)(A), including that the debtor made false representations and that he

made those representations with the intention and purpose of deceiving the

creditor, were not established on the record.  In re Azeglio, No. 09-16476, 2010

WL 4864439 (Bankr. D.N.J. Nov. 23, 2010).

    4.    <u>Stewart's Motion to Open the Case and Vacate the
Summary Judgment Order Entered October 10, 2008</u>.

On March 26, 2013, Stewart filed a motion to reopen this Chapter 13

case and to vacate the order for summary judgment entered on October 10,

2008.  Stewart recites that a motion was filed in state court in January 2013 to

seek to open the default judgment entered by the state court against Stewart

on October 10, 2007.  According to Stewart's current counsel, "the trial court

was unable to understand why the bankruptcy court first granted summary

judgment in Stewart's case, but later conducted a trial to later find in favor of

Azeglio.  Unable to ascertain the bankruptcy court's rationale, the trial court

directed that a motion to vacate the summary judgment order be made to this

court." (Brief of Defendant's Motion to Reopen at 2).  Stewart contends that the

outcome of the nondischargeability complaints against him and Azeglio are

entirely inconsistent.  He relies on Fed.R.Civ.P. 60(a)(5) and (6) to vacate the

order for summary judgment entered against him in October 2008 by this

court, and to allow the matter to be tried on the merits.  The debtor contends

that the deficiencies of the plaintiffs' cause as to the Azeglio

nondischargeability complaint will most probably apply to him as well,

particularly because his involvement with the transactions was more remote

than that of Azeglio.

## DISCUSSION

I.      Motion to Reopen.

        In considering whether or not to reopen a closed Chapter 7 case, our

actions are governed by 11 U.S.C. § 350.  Section 350(b) provides that a "case

may be reopened in the court in which such case was closed to administer

assets, to accord relief to the debtor, or for other cause."  See also

Fed.R.Bankr.P. 5010 ("A case may be reopened on motion of the debtor or other

party in interest pursuant to § 350(b) of the Code.").  The bankruptcy court has

"broad discretion" to reopen a case, and the determination depends upon the

particular circumstances of the case.  In re Zinchiak, 406 F.3d 214, 223 (3d

Cir. 2005).  See also In re Lockings, 308 Fed.Appx. 583, 584 (3d Cir. 2008)

(decisions to reopen are reviewed under an abuse of discretion standard);

<u>Donaldson v. Bernstein</u>, 104 F.3d 547, 551 (3d Cir. 1997).  The burden is on

the party moving to reopen the case to establish cause.  <u>In re Phillips</u>, No. 09–

28759, 2012 WL 1232008, *3 (Bankr. D.N.J. Apr. 12, 2012).


In this case, the movant cites to Rule 60(b) to justify reopening the

debtor's case.  Relief under Rule 60(b) could satisfy the "for other cause"

language in section 350(b), assuming such relief is warranted.  <u>In re Woods</u>,

173 F.3d 770, 778 (10th Cir. 1999) ("We have no trouble concluding that if Rule

60(b) relief was available and warranted, the court was justified in reopening

the [debtor's] case for 'cause.'").  We turn then to consideration of Rule 60(b),

specifically Rules 60(b)(5) and 60(b)(6).


II.    Rule 60.


Rule 60 of the Federal Rules of Civil Procedure is made applicable to

bankruptcy cases by application of Rule 9024 of the Federal Rules of

Bankruptcy Procedure.  Fed.R.Bankr.P. 9024.  <u>See</u> <u>In re Olick</u>, 311 Fed.Appx.

529, 531 (3d Cir. 2008); <u>In re Subramanian</u>, 245 Fed.Appx. 111, 115 (3d Cir.

2007).  Rule 9024 adopts Rule 60 with some exceptions, most notably that the

one year time period under Rule 60(c) to bring a motion does not apply to a

motion to reopen a bankruptcy case.  The debtor's motion herein relies upon

Rule 60(b)(5) and 60(b)(6).

A.     Rule 60(b)(5).

Rule 60(b)(5) provides in relevant part that the court may "relieve a party
. . . from a final judgment, order, or proceeding" if "it is based on an earlier
judgment that has been reversed or vacated; or applying it prospectively is no
longer equitable."  Fed.R.Civ.P. 60(b)(5).  "Rule 60(b)(5) may not be used to
challenge the legal conclusions on which a prior judgment or order rests, but
the Rule provides a means by which a party can ask a court to modify or vacate
a judgment or order if 'a significant change either in factual conditions or in
law'" renders continued enforcement 'detrimental to the public interest.'" Horne
v. Flores, 557 U.S. 433, 447, 129 S. Ct. 2579, 2593, 174 L.Ed.2d 406 (2009)
(quoting Rufo v . Inmates of Suffolk County Jail, 502 U.S. 367, 384, 112 S. Ct.
748, 116 L.Ed.2d 867 (1992)).  The moving party bears the burden of
demonstrating changed circumstances exist, Id., and "must establish at least
one of the following four factors by a preponderance of the evidence to obtain
modification or vacatur: (1) a significant change in factual conditions; (2) a
significant change in law; (3) that 'a decree proves to be unworkable because of
unforeseen obstacles'; or (4) that 'enforcement of the decree without
modification would be detrimental to the public interest.'" Democratic Nat.
Committee v. Republican Nat. Committee, 673 F.3d 192, 202 (3d Cir. 2012)
(quoting Rufo v. Inmates of the Suffolk County Jail, et al., 502 U.S. 367, 384,
112 S. Ct. 748, 116 L.Ed.2d 867 (1992)).  See also Agostini v. Felton, 521 U.S.
203, 215, 117 S. Ct. 1997, 2006, 138 L.Ed.2d 391 (1997) ("A court may

15

recognize subsequent changes in either statutory or decisional law.").

The debtor asserts here that the court's previous order granting summary judgment to the plaintiffs on collateral estoppel grounds is no longer equitable in light of the court's subsequent determination in In re Azeglio. The debtor reminds the court that the underlying state court determination was rendered as a default judgment, and that the debtor and Mr. Azeglio were involved in the same litigation. The debtor maintains that he had no opportunity to present his case before either the state court or the bankruptcy court, and that if "this Court determined that a person with closer ties to the plaintiffs had no knowledge of an oil tank and committed no fraud; then, it would be impossible for Mr. Stewart to have committed fraud." Debtor's Brief at 5. The debtor's reliance on Rule 60(b)(5) and the Azeglio opinion, however, is misplaced.

Although the debtor's case and the Azeglio case are factually intertwined, they are not identical. The factual circumstances leading up to the default judgments before the state court, as well as the factual circumstances of each defendant's connection to the real estate transaction at the heart of this transaction, were not identical. The debtor had notice of his state court action, albeit in a limited way, while Azeglio did not. As to Stewart's connection to the real estate transaction, the factual record was never developed at trial. The plaintiffs allege that Stewart lived in the same development and would have

16

known about the underground oil tanks on each property.  As well, the letter

sent to Stewart's agency before the real estate closing, which alerted the agency

to the issue of the underground oil tank on the property, was addressed to

Stewart himself.  The admissibility of the letter or proof that Stewart received it

is certainly unclear.  I mention the issue only to highlight the differences

between the connections of Stewart and Azeglio with the transaction.


In the Stewart adversary proceeding, I granted summary judgment on

collateral estoppel grounds, based on the state court judgment entered against

Stewart in favor of the plaintiffs in 2007.  In the Azeglio adversary proceeding, I

declined to apply collateral estoppel, tried the case and ruled in favor of the

defendant.  The fact that a different result was achieved against the plaintiffs'

claims by Stewart and Azeglio does not represent a significant change in either

factual conditions or the law, and is not shown to be detrimental to the public

interest.  The debtor had ample opportunity to seek reconsideration of the

grant of summary judgment, or to appeal the decision by this court, but did

not do so.  The debtor cannot, now some four and a half years later, seek a

second bite at the apple.


B.      Rule 60(b)(6).


Similarly, the debtor cannot be afforded relief under Rule 60(b)(6).  Rule

60(b)(6) is a catchall provision that allows the court to grant relief for "any

other reason that justifies relief." Fed.R.Civ.P. 60(b)(6). See Vantassel v.

Rozum, 469 Fed.Appx. 110, 112 (3d Cir. 2012). This rule "grants federal

courts broad authority to relieve a party from a final judgment 'upon such

terms as are just,' provided that the motion is made within a reasonable time

and is not premised on one of the grounds for relief enumerated in clauses

(b)(1) through (b)(5)." Liljeberg v. Health Services Acquisition Corp., 486 U.S.

847, 863, 108 S. Ct. 2194, 2204, 100 L.Ed.2d 855 (1988). The intent of the

rule is to allow the court to vacate a judgment where it would be "'appropriate

to accomplish justice.'" Id. at 864, 108 S. Ct. at 2204 (quoting Klapprott v.

United States, 335 U.S. 601, 614-615, 69 S. Ct. 384, 390, 93 L.Ed. 266

(1949)). The Supreme Court has cautioned, however, that such relief should

only be applied in "'extraordinary circumstances.'" Id. (quoting Ackermann v.

United States, 340 U.S. 193, 71 S. Ct. 209, 95 L.Ed. 207 (1950)). See Gonzalez

v. Crosby, 545 U.S. 524, 535, 125 S. Ct. 2641, 2649, 162 L.Ed.2d 480 (2005);

Salazar ex rel. Salazar v. District of Columbia, 633 F.3d 1110, 1119 (D.C. Cir.

2011) ("The phrase 'extraordinary circumstances' does not appear in the text of

Rule 60(b)(6), but the Supreme Court has added this gloss to the rule.");

Budget Blinds, Inc. v. White, 536 F.3d 244, 255 (3d Cir. 2008) ("courts have

added a requirement that a party seeking Rule 60(b)(6) relief must demonstrate

the existence of 'extraordinary circumstances' that justify reopening the

judgment"). The inclusion of an "extraordinary circumstances" requirement

"balance[s] the broad language of Rule 60(b)(6), which allows courts to set aside

judgments for 'any' reason justifying relief, with the interest in the finality of

18

judgments." <u>Budget Blinds, Inc. v. White</u>, 536 F.3d 244, 255 (3d Cir. 2008).

The Third Circuit has stated that "a showing of extraordinary circumstances involves a showing that without relief from the judgment, 'an "extreme" and "unexpected" hardship will result.'" <u>Id</u>. (quoting <u>Mayberry v. Maroney</u>, 558 F.2d 1159, 1163 (3d Cir. 1977)).  The Circuit has pointed out, however, that "extraordinary circumstances rarely exist when a party seeks relief from a judgment that resulted from the party's deliberate choices." <u>Id</u>. (default judgment was not an unexpected hardship where the defendant chose not to challenge it).  Rule 60(b)(6) cannot be used as a substitute for an appeal. <u>Rivera v. Scism</u>, 472 Fed.Appx. 105, 106 (3d Cir. 2012).  The Supreme Court has explained that the:

> Petitioner made a considered choice not to appeal, apparently because he did not feel that an appeal would prove to be worth what he thought was a required sacrifice of his home.  His choice was a risk, but calculated and deliberate and such as follows a free choice.  Petitioner cannot be relieved of such a choice because hindsight seems to indicate to him that his decision not to appeal was probably wrong, considering the outcome of [another] case.  There must be an end to litigation someday, and free, calculated, deliberate choices are not to be relieved from.

<u>Ackermann v. United States</u>, 340 U.S. 193, 198, 71 S. Ct. 209, 211-12, 95 L.Ed. 207 (1950).  <u>See</u> <u>also</u> <u>Coltec Industries, Inc. v. Hobgood</u>, 280 F.3d 262, 275 (3d Cir. 2002) (choosing to settle a case was a voluntary action not subject to relief under Rule 60(b)); <u>Infiniti Information Solutions, LLC v. U.S.</u>, 93 Fed.Cl. 699, 706 n.11 (Fed.Cl. 2010) ("Notably, the failure of a party to appeal cannot be appropriate grounds for a Rule 60(b)(6) motion because courts will

not intervene to relieve a party from adverse consequences resulting from his or

her choice of strategy."). <u>But</u> <u>see</u> <u>Klapprott v. U.S.</u>, 335 U.S. 601, 69 S. Ct.

384, 93 L.Ed. 266 (1949) (setting aside a default judgment that had been

entered when the plaintiff had no freedom of choice; he had been ill, destitute

and in jail on unrelated charges at the time).

In this case, the debtor made a decision not to seek reconsideration or to

appeal this court's decision.  Rule 60(b)(6) cannot be used as a back door

mechanism to obtain reconsideration of an adverse decision, absent

extraordinary circumstances.  The debtor has failed to demonstrate such

circumstances.  The outcome in the Azeglio case does not rise to the required

demonstration of extraordinary circumstances that would warrant

reconsideration of the 2008 judgment entered by this court in the Stewart

adversary proceeding.

    C.      Motion Filed Under Either Rule 60(b)(5) or (6) Must be
              Made Within a Reasonable Time.

Alternatively, even were I to find that the debtor had satisfied Rule

60(b)(5) or established extraordinary circumstances for purposes of Rule

60(b)(6), the debtor's motion would still have to be denied as untimely.  All

motions brought under Rule 60(b), other than 60(b)(4) [4], must be "made within

---

[4]    Motions brought under Rule 60(b)(4) are not subject to the reasonable
time standard.  <u>U.S. v. One Toshiba Color Television</u>, 213 F.3d 147, 157 (3d
Cir. 2000)("nearly overwhelming authority exists for the proposition that there

a reasonable time." Fed.R.Civ.P. 60(c)(1).[5]  The exact amount of time that

constitutes a "reasonable time" is not defined in the rule and thus turns on

"the circumstances of each case."  In re Diet Drugs (Phentermine/

Fenfluramine/Dexfenfluramine) Product Liability Litigation, 383 Fed.Appx.

242, 246 (3d Cir. 2010).  To evaluate whether the time taken is reasonable,

courts have focused upon various factors, including:  "finality, the reason for

delay, the practical ability for the litigant to learn of the grounds relied upon

earlier, and potential prejudice to other parties."  Id.


Here, summary judgment was entered against the debtor on October 10,

2008, and the adversary proceeding was closed approximately two weeks later.

The plaintiffs have relied upon this decision for the last four and a half years

and would be greatly prejudiced if they had to retry this matter at this late

date.  The debtor asserts that he "did not take a hands off or do nothing

approach," and that he repeatedly sought the assistance of various counsel to

vacate the summary judgment order entered against him, to no avail.

However, the debtor apparently took no action to dispute or appeal the 2008

---

are no time limits with regards to a challenge to a void judgment because of its
status as a nullity; thus laches is no bar to recourse to Rule 60(b)(4)").

[5]    Motions brought under Rule 60(b)(1), (2) and (3) have an additional, more
restrictive time period of one year within which the motion must be brought,
with certain exceptions in the bankruptcy context.  Fed.R.Bankr.P. 9024.

order until after the Azeglio decision was rendered. [6]  There is no explanation

offered to explain the debtor's failure to appeal in his own right, and no clear

indication in the record as to the attempts to retain counsel.  Moreover, there is

no indication in the record that the debtor attempted to contact and inform the

court of his alleged inability to obtain counsel.  See, e.g., Vrankovich v.

Trammell Trucking Co., No. 83 C 9220, 1986 WL 4441 (N.D.Ill. April 7, 1986)

(denying relief under 60(b)(1) where defendant failed to inform the court of the

problem).  The debtor asserts that he was unable to obtain counsel to pursue

his case earlier, yet there is no evidence to suggest that he started to seek

counsel until some point in 2011, after the Azeglio decision was rendered and

over two and half years after the entry of summary judgment in his own case.


Third Circuit precedent seems to suggest that, absent extraordinary

circumstances, two years or less may be the unwritten standard for

establishing reasonableness.[7]  In a case frequently cited by the Third Circuit,

wherein the Circuit reversed a trial court decision granting relief two and half

---

[6]    The copies of emails and correspondence recently provided by the debtor
in a supplemental submission reflect communications occurring in late 2010
into 2011, over two years after the entry of the summary judgment order.

[7]    Several decisions have referenced the one year limitation imposed on
Rule 60(b)(1-3) motions as relevant to the Rule 60(b)(6) analysis.  See, e.g.,
Gordon v. Monoson, 239 Fed.Appx. 710, 713 (3d Cir. 2007) ("A motion under
Rule 60(b)(6) filed more than a year after final judgment is generally untimely
unless 'extraordinary circumstances' excuse the party's failure to proceed
sooner."); O'Brien v. Real Estate Mortg. Network, Inc., Civ. A. No. 06–4005,
2009 WL 2595639, *2 n.1 (D.N.J. Aug. 20, 2009) (using the one year standard
for 60(b)(1-3) as a guideline for a motion under Rule 60(b)(6)); Crawford v.
Hendricks, Civ. A. No. 01–4531, 2009 WL 1209262, *3 (D.N.J. May 4, 2009).

years later, the court remarked that "[e]ven if we were convinced that this case involved 'extraordinary circumstances and that the record contained sufficient evidence thereof,' we would still have serious doubts as to whether there had been compliance with the 'reasonable time' requirement applicable to Rule 60(b)(6)." Martinez-McBean v. Government of Virgin Islands, 562 F.2d 908, 913 n.7 (3d Cir. 1977). Subsequent case law has consistently found delays of two years or more, absent extraordinary circumstances, to be unreasonable. See, e.g., U.S. ex rel. Pritsker v. Sodexho, Inc., 493 Fed.Appx. 309, 312 (3d Cir. 2012), cert. denied, 133 S. Ct. 1586 (2013) (60(b)(6) motion filed two years later was not filed within a reasonable amount of time); U.S. v. Williams, 326 Fed.Appx. 656, 657-58 (3d Cir. 2009) (motion brought more than 3 years later was not reasonable); Moolenaar v. Government of Virgin Islands, 822 F.2d 1342, 1348 (3d Cir. 1987) (motion brought almost 2 years later was not reasonable).[8] See also Wallace v. Hayman, Civ. A. No. 09–5644, 2012 WL 3916955, *2 (D.N.J. Sep. 7, 2012) (a request filed 2 years later was not within a reasonable time); Lehmann v. New Jersey Dept. of Corrections, Civ. A. No. 07–5964, 2012 WL 2344879, *3 (D.N.J. June 20, 2012) (delay of 18 months was found to be unreasonable); Greenblatt v. Orenberg, Civ. A. No. 03-2240, 2007 WL 928482, *2 (D.N.J. Mar. 27, 2007) (motion filed "three years after . . .

---

[8]    See also Zahl v. Harper, 403 Fed.Appx. 729, 734 (3d Cir. 2010) (8 years was not a reasonable amount of time), Mikkilineni v. Gibson-Thomas Engineering Co., 379 Fed.Appx. 256, 259 (3d Cir.), cert. denied, 131 S. Ct. 826, 178 L.Ed.2d 557 (2010) (an attempt to reopen a judgment almost 5 years later was untimely); Wilder v. DMR Consulting Group, Inc., 345 Fed.Appx. 735, 736 (3d Cir. 2009) (a motion filed almost 7 years later was unreasonable).

dismissal was entered, one and a half years after the Third Circuit affirmed and more than one year after the Supreme Court denied certiorari" was untimely.).

Here, we have a delay of four and a half years, without a demonstration of extraordinary circumstances. The debtor's motion must be denied. The debtor's citation to Klapprott v. U.S., 335 U.S. 601, 69 S. Ct. 384, 93 L.Ed. 266 (1949) does not change this conclusion. As the debtor correctly points out, in Klapprott, the defendant sought relief under Rule 60(b) four and a half years after a default judgment was entered against him. However, as the Supreme Court explained in Ackermann, "[t]he Klapprott case was a case of extraordinary circumstances." Ackermann v. U.S., 340 U.S. 193, 199, 71 S. Ct. 209, 212, 95 L.Ed. 207 (1950).

> The basis of [Klapprott's] petition was not that he had neglected to act in his own defense, but that in jail as he was, weakened from illness, without a lawyer in the denaturalization proceedings or funds to hire one, disturbed and fully occupied in efforts to protect himself against the gravest criminal charges, he was no more able to defend himself in the New Jersey court than he would have been had he never received notice of the charges.

Id. at 200, 71 S. Ct. at 212. As the Court in Ackermann remarked, "[b]y no stretch of imagination can the voluntary, deliberate, free, untrammeled choice of petitioner not to appeal compare with the Klapprott situation." Id. The distinction drawn by the Ackermann court to the Klapprott circumstances is equally relevant here.

24

The factual circumstances in another case cited by the debtor to support

his position, In re Krautheimer, 210 B.R. 37 (Bankr. S.D.N.Y., 1997) are closer

to the circumstances presented here, but must be distinguished as well.  In

Krautheimer, the debtor's state court counsel withdrew shortly before trial, but

the debtor retained new counsel, and the matter proceeded to trial.  Id. at 40.

The debtor chose not to appeal the state court decision, filed for bankruptcy

relief, and proceeded pro se in the adversary proceeding filed against him.

Approximately 18 months after the entry of summary judgment against him on

collateral estoppel grounds, the debtor filed a pro se motion under Rule 60(b)(6)

to vacate the order.  Id. at 41.  The court focused on "the unique circumstances

of a pro se litigant" who had proceeded pro se for two years with "little legal

knowledge or experience."  Id. at 43.  Noting that the debtor was denied an

opportunity to litigate the issue of nondischargeability, had potential defenses

that required an evidentiary hearing, and there was no unfair prejudice to the

plaintiff, the court granted the debtor's quest for relief.  Id. at 44.  In the

instant case, we do not have a party that chose to proceed pro se but rather

one that chose not to proceed at all.  The debtor has failed to establish

extraordinary circumstances, and the delay in filing the Rule 60(b) motion of

over four and a half years is not reasonable on this record.

For these reasons, the debtor's motion to vacate the order entered on October 10, 2008 granting summary judgment in favor of the plaintiffs is denied.

Dated:   June 11, 2013

_____
JUDITH H. WIZMUR
JUDGE, U.S. BANKRUPTCY COURT